SHEPHERD, FINKELMAN, MILLER
 & SHAH, LLP
JAMES C. SHAH
NATALIE FINKELMAN BENNETT
475 White Horse Pike
Collingswood, NJ  08107
Telephone: 856/858-1770
Facsimile: 866/300-7367
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

*Attorneys for Plaintiff, Gina Priano-Keyser,*
*On Behalf of Herself and*
*All Others Similarly Situated*

(Additional Counsel on Signature Page)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GINA PRIANO-KEYSER, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>APPLE, INC.,<br><br>        Defendant. | Case No.  2:19-cv-09162<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DIMISS**<br><br><br><u>**ORAL ARGUMENT REQUESTED**</u> |

# TABLE OF CONTENTS

Table of Authorities ...................................................................................... ii

I.     INTRODUCTION ............................................................................ 1

II.    STATEMENT OF FACTS................................................................ 1

III.   ARGUMENT ................................................................................... 5

       A.    Plaintiff's NJCFA Claim is Well Pled and Should Not be Dismissed 6

             1.    The Complaint Sufficiently Alleges the Defective Nature of the
                   Watches and States an Omission-Based Claim Under the
                   NJCFA ................................................................................ 7

             2.    The Complaint Sufficiently Alleges That the Omissions Were
                   Made Knowingly.................................................................. 11

       B.    Plaintiff Has Stated a Claim for Breach of Express Warranty .......... 19

             1.    Plaintiff Has Pled a Defect Covered by Apple's Warranty ..... 19

             2.    Plaintiff's Express Warranty Claim Covers All Class Members
                   Who Experienced the Defect During the Limited Warranty
                   Period ................................................................................ 22

       C.    Plaintiff Has Standing to Assert Claims for Apple Series 1 and Series
             2 Watch Owners ............................................................................. 23

       D.    Plaintiff Has Standing to Seek Injunctive Relief............................... 28

       E.    Plaintiff Should Be Permitted to Amend if the Court Deems the CAC
             Deficient in Any Respect ................................................................. 30

IV.    CONCLUSION............................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Alban v. BMW of N. Am., LLC, No.*,
   2010 WL 3636253 (D.N.J. Sept 8, 2010) ..................................................... 13, 15

*Alin v. Am. Honda Motor Co.*,
   2010 WL 1372308 (D.N.J. 2010) ........................................................................20

*Amchem Prods., Inc. v. Windsor*,
   *521 U.S. 591 (1997)* ..........................................................................................25

*Annecharico v. Raymour & Flanigan*,
   2016 WL 7015615 (D.N.J. Nov. 30, 2016) ................................................. 10, 11

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ....................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................5

*Bell Atl Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................5

*Burke v. Weight Watchers International, Inc.*,
   983 F.Supp.2d 478 (D.N.J. 2013) .......................................................................27

*Chaudhri v. Lumileds LLC*,
   2018 WL 6322623 (D.N.J. Dec. 3, 2018) .........................................................7, 18

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) .......................................................................................24

*Clark v. McDonalds, Corp.*,
   213 F.R.D. 198 (D.N.J. 2003) ............................................................................25

*Cox v. Sears Roebuck & Co.*,
   647 A.2d 454 (N.J. 1994) ...................................................................................16

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989) ................................................................................6

*Dicuio v. Brother Intern. Corp.*,
  2012 WL 3278917 (D.N.J. Aug. 9, 2012) ............................................................29

*Duffy v. Samsung Elecs. Am., Inc.*,
  2007 WL 703197 (D.N.J. Mar. 2, 2007) ..............................................................16

*Durso v. Samsung Electronics Amer., Inc.*,
  2013 WL 5947005 (D.N.J. Nov. 6, 2013) ............................................................27

*Dzielak v. Whirlpool Corp.*,
  26 F. Supp. 3d 304 (D.N.J. 2014) .......................................................................28

*Elias v. Ungar's Food Prods., Inc.*,
  252 F.R.D. 233 (D.N.J. 2008) ..............................................................................27

*Falk v. Nissan North America, Inc.*,
  2018 WL 2234303 (N.D. Cal., May 16, 2018) .....................................................21

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................30

*Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific, LLC*,
  945 F. Supp. 2d 543 (D.N.J. 2013) .....................................................................19

*Gennari v. Weichert Co. Realtors*,
  148 N.J. 582 (1997) ............................................................................................17

*Gould Elecs. Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000) ..................................................................................6

*Green v. Green Mountain Coffee Roasters, Inc.*,
  279 F.R.D. 275 (D.N.J. 2011) ..............................................................................27

*Hedges v. United States*,
  404 F.3d 744 (3d Cir. 2005) ..................................................................................5

*Heyman v. Citimortgage, Inc.,*
  2014 WL 4637034 (D.N.J. Sept. 15, 2014) .........................................................13

*Hilsenrath on behalf of C.H. v. Sch. Dist. of Chathams*,
  2018 WL 2980392 (D.N.J. June 13, 2018) ............................................................5

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*,
  2015 WL 4591236 (D.N.J. July 29, 2015) ................................................... passim

*In re Ford Motor Co. Spark Plug and 3-Valve Engine Prod. Liab. Litig.*,
  2014 WL 3778592 (N.D. Ohio, July 30, 2014)....................................................17

*In re Gerber Probiotic Sales Practices Litig.*,
  2014 WL 5092920 (D.N.J. Oct. 10, 2014) ...........................................................26

*In re Lord Abbett Mutual Funds Fee Litig.*,
  407 F. Supp. 2d 616, 624 (D.N.J. 2005), 463 F. Supp. 2d 505 (D.N.J. 2006),
  rev'd 553 F.3d 248 (3d Cir. 2009).......................................................................25

*In re L'Oreal Wrinkle Cream Marketing and Sales Practices Litig.*,
  2013 WL 6450701 (D.N.J. Dec. 9, 2013)....................................................... 26-27

*In re MacBook Keyboard Litig.*,
  2019 WL 176581 (N.D.Cal., April 22, 2019).......................................................15

*In re MyFordTouch Consumer Litig.*,
  46 F.Supp.3d 936 (N.D.Cal. 2014) ......................................................................10

*In re Rockefeller Ctr. Properties Inc. Sec. Litig.*,
  311 F.3d 198 (3d Cir. 2002) ...........................................................................9, 10

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017)....................................................... 22, 23

*Lieberson v. Johnson & Johnson Consumer Co.*,
  865 F.Supp.2d 529 (D.N.J. 2011) .......................................................................28

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
  800 F.3d 99 (3d Cir. 2015) ...................................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................................24

*Luppino v. Mercedes-Benz USA, Inc.,* ,
  2013 WL 6047556 (D.N.J. Nov. 12, 2013) ..........................................................27

*Maniscalco v. Brother Int'l Corp. (USA)*,
  627 F.Supp.2d 494 (D.N.J.2009)...........................................................................7

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014) ...................................................................20

*McNair v. Synapse Group Inc.*,
    672 F.3d 213 (3d Cir. 2012) ...................................................................29

*McQueen v. BMW of N. Am., LLC*, ,
    2013 WL 4607353 (D.N.J. Aug. 29, 2013) ........................................... 10, 11, 14

*McQueen v. BMW of N. Am., LLC, No.*,
    2014 WL 656619 (D.N.J. Feb. 20, 2014) ...........................................................13

*Merkin v. Honda N. Am., Inc.*,
    2017 WL 5309623 (D.N.J. Nov. 13, 2017) ........................................................14

*Mickens v. Ford Motor Co.*,
    900 F. Supp. 2d 427 (D.N.J. 2012) ...................................................... 15, 16

*Morris v. BMW of N. Am. LLC*,
    2014 WL 793550 (D.N.J. 2014) ...................................................................21

*Neuss v. Rubi Rose, LLC*,
    2017 WL 2367056 (D.N.J. May 31, 2017) .........................................................28

*Nobile v. Ford Motor Co.*,
    2011 WL 900119 (D.N.J. Mar. 14, 2011) .........................................................16

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ...................................................................25

*Paramount Ent., Inc. v. Laborers Eastern Region Organizing Fund*,
    2014 WL 791825 (D.N.J. Feb. 25, 2014) .........................................................30

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) ...................................................................25

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ...................................................................5

*Reckitt Benckiser LLC v. Cotiviti, LLC*,
    2016 WL 5791410 (D.N.J. Oct. 3, 2016) .........................................................7

*Reiter v. Anthem Blue Cross Blue Shield*,
  2018 WL 3472627 (D.N.J. July 18, 2018) ........................................................ 5-6

*Skeen v. BMW of N. Am., LLC*,
  2014 WL 283628 (D.N.J. Jan. 24, 2014)............................................................22

*Stewart v. Smart Balance, Inc.*,
  2012 WL 4168584 (D. N.J., June 26, 2012)........................................................26

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)................................................................................24

*T.J. McDermott Transp. Co. v. Cummins, Inc.*,
  2015 WL 1119475 (D.N.J. Mar. 11, 2015) ............................................... 6, 7, 8, 9

*Tobin v. Samsung Electronics Am., Inc.*,
  2019 WL 1399557 (D.N.J. 2019) ......................................................................21

*Union Ink Co. v. AT&T Corp.*,
  352 N.J. Super. 617 (App. Div. 2002)................................................................18

*Volin v. General Electric Co.*,
  189 F. Supp.3d 411 (D.N.J. 2016)....................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011).............................................................................24-25

## **Statutes**

N.J. Stat. Ann. § 56:8-19..............................................................................17

N.J. Stat. Ann. § 56:8-1................................................................................1

## **Rules**

Federal Rule of Civil Procedure 9(b)........................................................... 6, 7, 8, 10

Federal Rule of Civil Procedure 12(b)(1) ................................................................ 5

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 5, 6

Federal Rule of Civil Procedure 15(a) ................................................................. 30

Federal Rule of Civil Procedure 23 ................................................................... 24

## I.    INTRODUCTION

Plaintiff, Gina Priano-Keyser ("Plaintiff" or "Priano-Keyser"), respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss ("Motion") filed by Defendant, Apple, Inc. ("Defendant" or "Apple").  Plaintiff's Class Action Complaint ("CAC") more than adequately stated a claim for violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*. ("CFA" or "NJCFA").  Further, Apple's conduct constitutes a breach of its express warranty and Plaintiff has standing to assert her claims for damages and injunctive relief.  For the reasons stated below, the Court should deny the Motion in its entirety.

## II.    STATEMENT OF FACTS

Apple designs, manufactures, sells and warrants the Apple Watch, a "smart watch" that—depending on the model—allows consumers to track fitness, download apps, receive text messages, and make phone calls. ¶¶ 23, 31-34.[1]  Apple started selling Apple Watches in April 2015 when it introduced its "First Generation" Watch. ¶ 24.  Since then, Apple has introduced four additional Apple Watch series: the Series 1, Series 2, Series 3, and, most recently, the Series 4 (the "Watch" or "Watches").  ¶¶ 25, 28, 30.[2]  All Watches come in a variety of models, with varying specifications and prices (from $269 to $1,499).  ¶¶ 26–30.  Generally, customers

---

[1] All citations to "¶" or "¶¶" refer to the corresponding paragraphs of the CAC.

[2] The Series 4 Apple Watch became available for purchase in the United States in September 2018.

may select between aluminum or stainless-steel cases, "Ion-X glass" or Sapphire crystal screens, and 38mm or 42mm watch faces. *Id.*

Since 2015, Apple has marketed the Watches as durable, activity-oriented devices that customers can take anywhere and use for any practical purpose. ¶¶ 31–35. Advertising campaigns for the Series 1, 2, 3, and 4 Watches show various Apple Watch users swimming, hiking, running, climbing, dancing, and surfing. ¶ 34. Statements on the Apple Watch section of Apple.com have similarly extolled the activity-oriented qualities of each Watch series. ¶¶ 32–33. To a reasonable consumer, the implication of these advertisements is clear enough: Apple Watches are durable, activity-ready devices that will perform a variety of functions without issue. In reality, the contrary is true. The Watches all contain the same defect and/or flaw—a swelling component, the lithium-ion battery—that causes the screens on the Watches to crack, shatter, or detach from the body of the Watch through no fault of the wearer (the "Defect"). ¶ 3. The Defect posed and continues to pose a significant safety hazard to consumers, as the Defect's manifestation has caused Watch wearers to suffer cuts and burns. ¶¶ 9, 47.

Plaintiff is a Union County, New Jersey resident, who owns a Series 3 38mm Gold, aluminum case Apple Watch that she purchased on October 15, 2017. ¶¶ 16, 49. Prior to the purchase, Plaintiff and her daughter viewed the Apple website and internet promotional ads. ¶ 48. Thereafter, the Watch was used and maintained as

recommended by Apple.  ¶ 55.  On July 4, 2018, less than a year after purchase, the screen on Priano-Keyser's Watch unexpectedly detached from the Watch's body while on its charger. ¶¶ 49-50.  Priano-Keyser contacted Apple and made a "Genius Bar" appointment at the Apple store on August 10, 2018[3] at which the Apple employee examined the Watch and informed her the Watch needed to be sent to an Apple depot for screening, diagnosis, and repair.  ¶ 51.  The Watch was sent to the Apple depot, which apparently tested or examined the Watch and, on August 13, 2018, Apple informed Priano-Keyser it would not honor its Limited Warranty and repair her Watch.  ¶ 52.  Instead, Apple quoted Priano-Keyser a $229 repair price, which she refused, leaving Plaintiff with a functionally worthless, high-priced device. ¶ 53.

Priano-Keyser's experience with her Apple Watch is far from unique.  A substantial number of Apple Watch customers have detailed similar problems with the screens of their Series 1, Series 2, Series 3, and now Series 4 Watches on Apple's "Communities" online forums.  ¶¶ 43-45, 47, 56.  Customers have documented numerous instances of Apple Watch screens detaching from the body of their Watches, cracking (usually in a hairline manner around the screen's outer edge), or shattering. Frequently, these issues have occurred mere days or weeks after

---

[3] Apple correctly notes Plaintiff inadvertently stated the wrong year in ¶¶ 51 and 52 of her CAC, an oversight Plaintiff will correct at an appropriate time.

purchase.  ¶¶ 3, 56.  Some customers have documented injuries as a result of the screen breaking and detaching.  ¶¶ 9, 11, 47.  With few exceptions, customers reporting these incidents state the screen shattered and broke suddenly and was not the result of any misuse on their part.  ¶¶ 41–45.

Despite this widespread issue, Apple has refused to admit there is a defect with the Watches and, indeed, has treated customers experiencing the Defect in the same way it treated Priano-Keyser: with denials and overpriced repair costs. Even when the Defect occurs during the one-year Limited Warranty period—as here— Apple has refused to honor its warranties and repeatedly suggested the Defect is merely a result of "accidental damage" by the consumer.  ¶¶ 10, 56, 63.  And, although Apple is aware of the Defect in the Watches, it has actively concealed and failed to disclose the Defect to customers prior to, at, or after the time of purchase. ¶ 8.  Plaintiff reasonably expected the Watch to function properly and not have the concealed defect and pose a safety issue, and also expected that Apple would honor its warranty.  ¶¶ 11-13.  Had she been aware of Apple's conduct and the problems with the Watch, she would not have purchased it or would have paid less for it, but as a result of Apple's conduct, Plaintiff and Class members have suffered injury and incurred ascertainable losses and damages.  ¶¶ 11-13, 35, 53-54, 57, 60.

Plaintiff filed this action on April 1, 2019 and on May 17, 2019, Apple moved to dismiss the CAC.  For the reasons stated below, Apple's Motion should be denied in its entirety.

## III.  ARGUMENT

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted.  *Hilsenrath on behalf of C.H. v. Sch. Dist. of Chathams*, No. CV 18-966 (KM), 2018 WL 2980392, at \*2 (D.N.J. June 13, 2018).  In deciding the motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008).  A complaint should not be dismissed "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The defendant bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be either facial or factual attacks.  Apple makes a facial challenge here, asserting that Plaintiff does not allege sufficient grounds to establish subject matter jurisdiction.  *See Reiter v. Anthem Blue Cross*

*Blue Shield*, No. CV 17-H622, 2018 WL 3472627, at *2 (D.N.J. July 18, 2018) (citations omitted).  The standard of review on a facial attack is similar the standard for a Rule 12(b)(6) motion, because when "reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.*; *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

## A.    Plaintiff's NJCFA Claim is Well Pled and Should Not be Dismissed

While the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to consumer fraud claims, the "NJCFA is to be 'liberally construed in favor of protecting consumers,' . . . and motions to dismiss NJCFA claims are 'appropriately approached with hesitation.'" *T.J. McDermott Transp. Co. v. Cummins, Inc.*, 4-04209 (WHW), 2015 WL 1119475, at *5 (D.N.J. Mar. 11, 2015) (quotations and citations omitted).  Moreover, as should be the case here, "courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control." *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 (JBS-JS), 2015 WL 4591236, at *30 (D.N.J. July 29, 2015) (quoting *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).  This Court has recognized that the standard of sufficiency must be applied with sensitivity to context:

> [Plaintiffs] need not, however, plead the "date, place or time" of the fraud, so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." The purpose of Rule 9(b) is to provide notice of the "precise misconduct" with which defendants are charged and to prevent false or unsubstantiated charges. Courts should, however, apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.

*Reckitt Benckiser LLC v. Cotiviti, LLC*, No. 16-729 (KM), 2016 WL 5791410, at *3

(D.N.J. Oct. 3, 2016) (citations omitted).

### 1.   The Complaint Sufficiently Alleges the Defective Nature of the Watches and States an Omission-Based Claim Under the NJCFA

As this Court has stated:

> To state a claim under the NJCFA, a plaintiff must allege the following three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. Unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violation of regulations. An affirmative misrepresentation under the NJCFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Importantly, "[u]nlike common law fraud, the NJCFA does not require proof of reliance."

*Chaudhri v. Lumileds LLC*, No. CV18-2167 (KM)(CLW), 2018 WL 6322623, at *6

(D.N.J. Dec. 3, 2018).   The "heightened pleading standard of Rule 9(b) allows

essential elements of the omission under the NJCFA, such as intent, to be alleged

generally."   *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F.Supp.2d 494, 500

(D.N.J.2009); *McDermott*, 2015 WL 1119475, at *5 (intent, knowledge, and other

conditions of a person's mind can be alleged generally); *see also* Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally").

An "unlawful practice" under a consumer fraud act may be an affirmative act or an omission. *McDermott*, 2015 WL 1119475, at \*6. "To state an omission claim under the NJCFA a plaintiff must show that the defendant (1) knowingly concealed (2) a material facts (3) with the intention that plaintiff rely upon the concealment." *Id*.

Apple asserts that the consumer fraud claims arising from its knowing omissions should be dismissed for several reasons: (1) Plaintiff has not sufficiently alleged an actionable omission because she has not "sufficiently identified" the nature of the defect; (2) Plaintiff has not sufficiently alleged an actionable omission because the CAC lacks sufficient allegations as to Apple's knowledge of the defect; and (3) Plaintiff has not alleged that the omissions were made with the intent to deceive. (Memorandum of Law in Support of Apple Inc.'s Motion to Dismiss ("Def. Br.") at 13-18.) The Court should reject each of these arguments.

Several recent cases in this District demonstrate that the allegations here support a consumer fraud claim. First, as Judge Simandle held in *Caterpillar*, the "failure to identify a particular defect" is of no significance where, as here, the CAC alleges the nature of the actual broken components (cover glass) that are observable

by Plaintiff and Apple's other customers, that the Watches were plagued by the defective screens which Plaintiff believes to be caused by the battery swelling, and that the "precise nature of those defects are in the exclusive control" of the defendant. *Caterpillar*, 2015 WL 4591236, at *31; *see also* ¶¶ 41-51, 56-66.  Further, the visits by Plaintiff and Class members to the Apple stores and/or the Apple depots, which are the only place that warranty repairs are performed, provide a mechanism for Apple to obtain knowledge about the alleged defects—knowledge which, at the pleadings stage, remains in Apple's control.  *See Caterpillar*, 2015 WL 4591236, at *31; *accord McDermott*, 2015 WL 1119475, at *6 ("[p]laintiff indicates that whenever 'engine warning illuminations' occurred in one of its tractors, the tractor's 'de-rating system' would force the driver 'to divert from the intended trucking route to one of Defendants' authorized service providers' where the fault codes would be analyzed to determine what problems had occurred. . . These factual assertions adequately describe a means by which Defendants could have learned about the alleged defects.")

Plaintiff is not required to plead specific engineering or technical details of a defect about which Apple has exclusive knowledge.  *See In re Rockefeller Ctr. Properties Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) ("[w]here it can be shown that the requisite factual information is peculiarly within the defendant's

knowledge or control, the rigid requirements of Rule 9(b) may be relaxed").[4] Moreover, the crux of Plaintiff's consumer fraud claim is that Apple knew of the defect in the screens and that they would shatter and break upon upward pressure from components inside the Watch, ¶¶ 3-7, 41, 43-45),[5] and Apple failed to disclose the inherent defectiveness to Plaintiff prior to purchase -- circumstances under which "[n]umerous courts have permitted consumer fraud claims to proceed." *See Caterpillar*, 2015 WL 4591236, at *32 (citing cases); *In re MyFordTouch Consumer Litig.*, 46 F.Supp.3d 936, 957-958 (N.D. Cal. 2014) (defendant's pre-sale knowledge states claim); *see also* ¶¶ 22-66.

*McQueen v. BMW of N. Am., LLC*, No. 12-6674 (SRC), 2013 WL 4607353 (D.N.J. Aug. 29, 2013) and *Annecharico v. Raymour & Flanigan*, 16-1652 (FLW), 2016 WL 7015615 (D.N.J. Nov. 30, 2016), upon which Apple relies in arguing that the defect was not properly pled, are easily distinguishable. Def. Br. at 13-14. The plaintiff in *Annecharico* bought a mattress and protection plan and brought suit when he was denied use of the plan, but the plaintiff ***never identified any defect*** with respect to the mattress, nor did he specify whether it was a "sag, stain, tear or any

---

[4] Apple cites to this case for the Rule 9(b) requirements in a fraud action, but *Rockefeller Center* was a securities fraud case, and the truncated quote used by Apple did not include the beginning of the sentence, which starts "[i]n order to state a viable claim pursuant to Rule 10b–5" and then goes on to the language Apple quotes. *Rockefeller Ctr.*, 311 F.3d at 216. Def. Br. at 10-11.

[5] Apple's arguments about "information and belief" allegations Def. Br. at 14-15, conveniently ignore the additional allegations cited above.

type of deformity." 2016 WL 7015615, at *6.  Similarly, not only did the plaintiff in *McQueen* fail to allege that the exact details of the defect were exclusively in the defendant's possession, but the existence of the "transmission" defect was just not plausible in light of the fact that "out of a total pool of approximately 122,000 [v]ehicles," there were only 32 complaints about the defect, or only "0.026% of all [v]ehicles."  2013 WL 4607353, at *7.  Further, the citation to *McQueen* does not support Apple's nonsensical assertion that a swelling battery and a cracked screen are not "defects," but are mere "consequences" of a defect because in *McQueen*, plaintiff alleged only that the vehicle shifted into neutral contrary to operator command, but made no allegations of a defect other than about a defective "transmission system."  *Id.*

In contrast, here, in addition to alleging that more precise details of the defect are in Apple's exclusive knowledge (as is the number of affected Watches), Plaintiff's allegations of the nature of her Watch's failure, the similar complaints reported to Apple, as well as Plaintiff's additional allegations about Defendant's knowledge, clearly demonstrates the existence of a defect.  ¶¶ 3-13, 22-66.

### 2.    The Complaint Sufficiently Alleges That the Omissions Were Made Knowingly

Apple also argues that the CAC does not provide sufficient allegations that Apple had knowledge of the defects.  Def. Br. at 15-16.  This argument is completely

baseless because Plaintiff sets forth numerous allegations of Apple's knowledge of the defect after September 2016.

First, Apple sells a high-priced Watch, which it promotes as multifunctional and durable.  ¶¶ 31-35, 65.  As such, given that the screens began failing when consumers used them soon after their first sales to the public in 2015, either Apple discovered the defect during the pre-sale testing or after initial sales and did not disclose the defect, or Apple never performed any pre-sale testing.  ¶¶ 4, 41-42.  Either way, Apple's conduct violates the CFA.  Second, shortly after the 2015 launch of the First Generation Watch, the CAC alleges that Apple began receiving complaints of screens cracking and shattering.  ¶¶ 24-25, 41-42.  Next, Apple's knowledge includes the information that Apple's Genius Bar receives and tracks as to complaints, diagnosis, testing and repairs, as Apple's warranty requires that a customer take the Watch to an Apple Authorized Service Provider.  ¶¶ 37-39, 51-52, 56.  Fourth, Apple's awareness of the screens breaking and coming off of the Watches compelled it to acknowledge the problem and extend the warranty on the First Generation Watches and the Series 2 Watches beginning in April 2017.  ¶¶ 41-44.  These warranty extensions were necessarily proceeded by an accretion of knowledge by Apple.  Finally, Apple's knowledge is also demonstrated by the existence of an aftermarket, where vendors sell and market adhesives specifically designed to reattach Apple Watch screens.  ¶ 58.  So, Apple, with its exclusive

knowledge of the details of the defect, continued selling the Watches with the defective screens and batteries to customers without disclosing the defect or extending the warranty to all purchasers. ¶¶ 2, 4-8, 24-25, 28, 41-45, 48-56. Plaintiff bought her Watch in October 2017, years after Apple first became aware of the defect. ¶¶ 24, 41-44, 48-56.

These detailed allegations explaining when, where, and how Apple learned of the defect are more than sufficient to create the reasonable inference that Apple was aware of the defect, and its omissions were "made knowingly." *Caterpillar*, 2015 WL 4591236, at *32. In contrast, Plaintiff's allegations are a far cry from the allegations made in the authorities that Apple cites for its tepid assertion that Plaintiff's allegations are "mere boilerplate" and should be discounted. For example, in *McQueen v. BMW of N. Am., LLC*, No. CIV.A. 12-06674 (SRC), 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014), regarding the second amended complaint, the plaintiff alleged that the manufacturer knew of the defect from receiving "less than ten complaints" and argued that the manufacturer must have known of the defect because it designed the vehicles. In *Alban v. BMW of N. Am., LLC*, No. 09-5398 (DRD), 2010 WL 3636253 at *11 (D.N.J. Sept 8, 2010), plaintiff alleged knowledge of a defect only by virtue of BMW's issuance of a TSB years after the plaintiff purchased his vehicle. In *Heyman v. Citimortgage, Inc.*, 14-1680 (KM), 2014 WL 4637034, at *6 (D.N.J. Sept. 15, 2014), plaintiff merely alleged that the

bank should have known it was providing a loan that plaintiff could not afford but failed to allege that the bank concealed from plaintiff the fact that she could not afford the loan.  Here, in stark contrast, Plaintiff has alleged myriad ways in which Apple had knowledge of the defect and the cases upon which Defendant relies are inapposite.

Further, Apple's argument that the online complaints from the CAC cannot cure the so-called "pleading deficiencies" is an ineffective form-over-substance argument that simply ignores the allegations of the CAC.  Def. Br. at 15-17.  As an initial matter, the online forum is one of *several* alleged sources of Apple's knowledge of the defect, unlike in the cases cited by Apple.[6]  Further distinguishing Apple's authority, unlike in the cases Apple cites, the individuals in the Apple forum's online posts set forth in the CAC report the results of their contact with Apple, including their online chats, calls and personal visits to the Apple store, their experiences of the same defects with their Watches, and Apple's refusal to fix the Watches under warranty.  ¶ 56.  As other courts have recognized, these allegations, when viewed with the additional allegations of the CAC, clearly support a plausible inference of Apple's knowledge of the defect.  Notably, at least one other court has

---

[6] *See, e.g.*, *McQueen*, 2013 WL 4607353, at *6 (plaintiff cited online complaints, without more, as proof of defendant's knowledge of defect); *Merkin v. Honda N. Am., Inc.*, No. 17-cv-03625 (PGS), 2017 WL 5309623 (D.N.J. Nov. 13, 2017) (plaintiff included two online posts made prior to his purchase, none of which were alleged to have been reported directly to Honda).

completely rejected Apple's argument on this point. *See e.g., In re MacBook Keyboard Litig.*, 5:18-cv-02813 (EJD), 2019 WL 176581, at *6 (N.D. Cal., April 22, 2019) (rejecting Apple's argument that online complaints in apple.com forums and elsewhere are insufficient to show knowledge because they were not made to Apple Support or Apple stores and did not identify the defect).

Contrary to Apple's argument, there is no heightened standard for omission-based claims where the product comes with a warranty. Apple's citation to *Alban v. BMW of N. Am., LLC*, No. 09-5398 (DRD), 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010) on that issue is unavailing. *Alban* and the cases it relies on involve where "the allegedly-defective product was covered by a warranty," but knowing it would fail, "the defendant artificially limited the warranty period in an effort to avoid the cost of repairs." *Id*. In that situation, the courts held that the defendant must know that the defect would manifest after the limited warranty period.[7] *Id.* This Court has recognized that the NJCFA defense that a product performs beyond the warranty is not without limit, *Mickens v. Ford Motor Co.,* 900 F. Supp. 2d 427, 443 (D.N.J. 2012), and that a plaintiff may nevertheless state a claim by alleging, as here, that

---

[7] Here, in contrast, there is no allegation that Apple artificially limited the warranty period to avoid covering the costs of the screen defect, and Plaintiff actually alleges that Apple acknowledged and recognized the defect and extended the warranty on certain Watches, though it refused to cover Plaintiff's repair to her Series 3 Watch.

the purported defect manifested itself *within* the warranty period and that the manufacturer knew the product would fail.[8]

In addition, Apple cannot argue that it had no "duty to disclose" the defect. The NJCFA permits actions based on omissions. *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994). And "[i]mplicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 441 (D.N.J. 2012) (finding a duty to disclose where the plaintiff alleged an automobile manufacturer "knowingly concealed the galvanic corrosion defect from [the plaintiff] and the class members with the intent that they rely on the absence of such information when purchasing the affected vehicles"). Thus, a duty to disclose is created under the NJCFA when the manufacturer intentionally conceals the existence of a known defect from the consumers to induce the purchase. *See Caterpillar*, 2015 WL 4591236, at *32 (the "crux of [p]laintiffs' consumer fraud claim is that [the manufacturer] knew the Engines were defective and irreparable and failed to

---

[8] The detailed allegations here differ significantly from those made in the cases relied on by Apple. In *Nobile v. Ford Motor Co.,* No. 10–1890, 2011 WL 900119, at *1 n. 1 (D.N.J. Mar. 14, 2011), the plaintiffs failed to allege even "basic facts" such as the nature of the transmission defect, when or how it occurred, or the date or place they purchased their vehicle. And in *Duffy v. Samsung Elecs. Am., Inc.,* CIV.06–5259, 2007 WL 703197, at *2 (D.N.J. Mar. 2, 2007), the defect did not occur within the warranty period.

disclose the inherent defectiveness to Plaintiffs prior to purchase," and "[n]umerous courts have permitted consumer fraud claims to proceed under similar circumstances") (citing cases); *see also In re Ford Motor Co. Spark Plug and 3-Valve Engine Prod. Liab. Litig.*, No. 1:12-md-2316, 2014 WL 3778592, at *26-*28 (N.D. Ohio, July 30, 2014) (denying summary judgment on, *inter alia*, CFA and DPTA claims, and rejecting argument that there was no duty where defendant sold a vehicle with a known defect, which would manifest during warranty) (citing cases).

Apple next argues that "intent to deceive is required with respect to NJCFA claims that are based on the concealment, suppression, or omission of a material fact," citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605 (1997). Def. Br. at 17.[9] But its argument is entirely based on its mistaken assertion that Plaintiff has not alleged Apple's knowledge of the defect. This is incorrect, however, as Plaintiff has demonstrated that Apple acted with knowledge of the defect in the Watches and its argument fails.

The NJCFA provides for recovery by those who suffer "any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful" under the act." N.J. Stat. Ann. § 56:8-19. "An ascertainable loss occurs when a consumer receives

---

[9] *Gennari* holds that in order for "liability to attach to an omission or failure to disclose…the plaintiff must show that the defendant acted with knowledge" and that "intent to deceive is not a prerequisite to the imposition of liability." *Id.* (citations omitted).

less than what was promised." *Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002).  The final element of a NJCFA claim requires a causal relationship between any ascertainable loss and the unlawful practice.  "Stated simply, a plaintiff must plead that the 'unlawful consumer fraud caused his loss.'" *Chaudhri*, 2018 WL 6322623, at *8 (citation omitted).

Plaintiff alleges and common experience supports that "a reasonable consumer expects and assumes that, when he/she purchases an Apple Watch purportedly designed for active wear and use, the Watch screen will not spontaneously crack, detach, or shatter when it is being used within its normal and/or expected range of operation," and would "expect that the Watch will not be a safety hazard." ¶ 65.  Plaintiff alleges that she purchased what she thought was a defect-free Watch at full price, but received something less than what she reasonably expected – a Watch with a known defect, which Apple failed to fix. Further, as to causation, Plaintiff alleges that she was unaware of the defect and had she known about the information Apple withheld, she would not have purchased the Watch, or would have paid less for it.  ¶¶ 59-64.  More is not required. *See Volin v. General Electric Co*, 189 F. Supp.3d 411, 419 (D.N.J. 2016) (denying motion to dismiss CFA claim where plaintiff alleged defendant knew appliances were defective but concealed and withheld that information from plaintiff, and plaintiff alleged ascertainable loss was purchase of lesser valued defective gas range although she

thought she was receiving a defect-free appliance for which she paid full price). Plaintiff has properly alleged a claim under the NJCFA, and, therefore, Apple's Motion should be denied.

### B.     Plaintiff Has Stated a Claim for Breach of Express Warranty

Apple contends Plaintiff cannot state a claim for breach of express warranty because she "has not and cannot allege a defect 'in materials and workmanship.'" (Def. Br. at 20.)  That is, Apple argues Plaintiff's asserted claims relate only to a design defect rather than a manufacturing defect, and thus are not covered by Apple's Limited Warranty.  *Id.*  As detailed below, numerous New Jersey courts have consistently rejected this argument.

### 1.     Plaintiff Has Pled a Defect Covered by Apple's Warranty

Under New Jersey law, to state a claim for breach of express warranty, Plaintiff must allege: "(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description."  *Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific, LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013).  Although the CAC clearly satisfies this standard, Apple alleges Plaintiff's express warranty claims should be dismissed because "the gravamen of [her] Complaint is that all of the Watches at Issue contain the same defect."  Def.

Br. at 21.  In other words, Apple claims that Plaintiff is alleging that only a design defect affects the Watches, and, thus, cannot sustain a claim for breach of express warranty.

New Jersey courts have routinely rejected the same argument presented by Apple in a variety of other cases.  In *Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL 1372308, at *6 (D.N.J. 2010), for instance, in response to the same argument raised by defendant, the court stated:  "At the pleading stage, where the defect in design and defect in materials and workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."  Without discovery, Plaintiff cannot prove, much less plead, the precise cause of the defective screens in the Watches.  *See, e.g., Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 467 (S.D.N.Y. 2014)  ("Whether the[ ] alleged defects arose from a faulty design, faulty materials or faulty workmanship cannot be ascertained absent discovery, since any information concerning the true origin of the alleged defect is within the sole possession of the defendant.")(citation omitted). Faced with the same argument, the court in *In re Caterpillar, Inc.*, 2015 WL 4591236, at *19, held:

> "[I]t is premature at this stage to dismiss Plaintiffs' express warranty claim on the grounds that it is based on defective design as opposed to defects in material or workmanship . . . Whether the alleged repeated engine failures about which Plaintiffs complain were caused by

defective design or defect manufacture is a factual question which the Court cannot resolve on a motion to dismiss."

Other courts have reached similar conclusions. *See Morris v. BMW of N. Am. LLC*, No. 13-4980 (JLL), 2014 WL 793550, at *11 (D.N.J. 2014) ("Whether the alleged defect in the Navigation System is cause by defective hardware or software, a design defect or a defect in 'materials and workmanship' remains to be seen."); *Tobin v. Samsung Electronics Am., Inc*., No. 18-12473 (JLL), 2019 WL 1399557, at *6 (D.N.J. 2019) (stating that the court could consider whether the alleged defect was a design defect or manufacturing defect at the summary judgment stage).

Plaintiff has adequately pled a defect, and, at this stage in proceedings, is not required to do more. Contrary to Apple's assertions, Plaintiff's allegation that "swelling lithium-ion . . . batteries . . . cause Apple Watch screens to crack, shatter, or detach" due to "faulty li-on batteries, or . . . defective internal components . . ." plausibly alleges a defect, including a defect in materials and workmanship.  ¶¶ 3, 46.  Tellingly, despite Apple's self-serving efforts to characterize the nature of the defect, the CAC never refers to the issue as a design defect.

That Plaintiff alleges a defect "is present in every series, model and size of the Watches" does not control whether the alleged defect is a design or manufacturing defect.  *Falk v. Nissan North America, Inc.*, No. 17-CV-04871-HSG, 2018 WL 2234303, at *2 (N.D. Cal., May 16, 2018) (the fact that plaintiff alleges a defect that is present in all models does not lead to the conclusion that the defect is in the

design).  It is possible that the defect is indeed the result of poor design, just as it is possible the Watches' design was adequate, but their manufacture defective.  As the above law demonstrates, it is for neither Plaintiff nor this Court to determine the precise nature of the alleged defect at this early stage in proceedings.  What is necessary is that Plaintiff plausibly alleges a defect, whether a design defect and a manufacturing defect, and therefore, Plaintiff adequately pled a claim for breach of express warranty.

### 2.     Plaintiff's Express Warranty Claim Covers All Class Members Who Experienced the Defect During the Limited Warranty Period

In addition to the above, Apple argues that Plaintiff's breach of express warranty claim does not extend to individuals who did not experience the defect during Apple's one-year Limited Warranty period.  Def. Br. at 22.  Under New Jersey law, however, "[w]here the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable." *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014) (citing cases).  The plaintiff does so by alleging the manufacturer's "superior knowledge" of the defect, the manifestation of the defect during the product's useful life, and the consumer's inability to negotiate the terms of the warranty.  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765

(JLL), 2017 WL 1902160, at *12 (D.N.J. May 8, 2017) (quotations omitted). Plaintiff makes such allegations here.

In addition to the factual allegations indicating that Apple was aware of and concealed the latent Defect at the time of purchase and that failed within an unreasonable time, ¶¶ 59-66—which establishes substantive unconscionability—the allegations also establish that the Limited Warranty were uniformly imposed on purchasers and non-negotiable—which establish procedural unconscionability.  ¶¶ 36-40, 77.   As such, Plaintiff should be afforded, "through discovery, [the opportunity to] elicit sufficient evidence to support the allegations [that] the [time] limitations [are] not . . . applicable."  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *12.

### C.   Plaintiff Has Standing to Assert Claims for Apple Series 1 and Series 2 Watch Owners

Defendant does not dispute that Plaintiff has standing to assert an individual claim based on the Watch she purchased, a Series 3 Watch.  Defendant argues instead that Plaintiff does not have standing to represent "current and former owners of Second Generation Series 1 and Series 2 Apple Watches."  Def. Br. at 24-25.

The inner workings of the battery in the Watch are only ascertainable through discovery, and Apple's argument that the Watches are not substantially similar is not entitled to any weight on a motion to dismiss.  (*Id.* at 24.)  Further, while Apple relies on selected allegations of the CAC in support of its assertion that the Watches are

all different, ¶¶ 26-30, Apple does not point to any allegation that the batteries or screen materials differ.  In fact, the CAC alleges just the opposite, that the Watches "**all contain the same defect and/or flaw**, which causes the screen on the Watches to crack, shatter, or detach from the body of the Watch . . . through no fault of the wearer, oftentimes only days or weeks after the purchase."  ¶¶ 3, 45-47 (emphasis added).

Further, Defendant's argument improperly conflates Article III standing with the requirements of Rule 23; namely, Plaintiff's typicality and adequacy to represent absent Class members who purchased the other Apple watches with swelled components and broken screens that Apple refuses to repair.  Constitutional standing requires: (1) an injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *See Clapper v. Amnesty Int'l USA, Inc*., 133 S. Ct. 1138, 1147 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The doctrine of standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction."  *Summers v. Earth Island Inst*., 555 U.S. 488, 493 (2009) (citations omitted).  In a class action, this means that a litigant must be a member of the class and suffer the same injury as those she seeks to represent.  *See Wal-Mart Stores, Inc.*

24

*v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  Where a standing issue would not arise but for class certification, those class certification issues are logically antecedent to Article III standing and the class certification issues should be decided in advance of any standing issues.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997).[10]

Likewise, here, Plaintiff has presented claims of injury to herself based on her individual purchase of a Watch and thus has alleged facts which present a case or controversy under the Constitution.  Defendant does not argue otherwise.  Plaintiff has also alleged that Apple failed to disclose any defect with the Watch and failed to repair the Watch and that its actions are unfair, false and misleading.  ¶¶ 8-9, 31-35, 42-44, 60-66.  Taking Plaintiff's allegations as true, these allegations support Class standing for all of the Apple Watches.[11]

The considerable weight of authority in this District recognizes that a plaintiff does have standing to assert claims on behalf of class members for similar products,

---

[10] In other words, if the standing issue in question arises solely because of the question of class certification, then the class certification issue should be decided first and the standing question is determined with respect to the class as a whole, not just with respect to the named plaintiffs.  *Clark v. McDonalds, Corp*., 213 F.R.D. 198, 204 (D.N.J. 2003) (quoting *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002)); *In re Lord Abbett Mutual Funds Fee Litig.*, 407 F. Supp. 2d 616, 624 (D.N.J. 2005) (denying motion to dismiss claims relating to funds plaintiffs did not own), vacated on other grounds, 463 F. Supp. 2d 505 (D.N.J. 2006), rev'd 553 F.3d 248 (3d Cir. 2009).

[11] Apple's argument that Plaintiff cannot pursue claims that "may have nothing to do with the watch she purchased," Def. Br. at 24, is absurd, as the CAC clearly seeks damages for injuries resulting from the screen cracking and popping off, and not for additional but yet unnamed defects.

like the Series 1 and Series 2 Watches here, that Plaintiff did not purchase. For example, in *Stewart v. Smart Balance, Inc.*, No. 11–6174 (JLL), 2012 WL 4168584, at *14-16 (D. N.J., June 26, 2012), the court refused to dismiss plaintiffs' claims on standing grounds. Judge Linares recognized that in a class action, traditional notions of standing are not completely informative of the claims that can be asserted, and noted that the Third Circuit permits plaintiffs to assert, in a class action, claims that plaintiffs might not have standing to pursue on an individual basis. *See id.* at *15 (reviewing Third Circuit decision and explaining "the Third Circuit held that notwithstanding the fact that a plaintiff lacked standing to pursue a particular claim, she could assert that claim in a putative class action where she did have standing to pursue two closely related claims against the same defendant.") Thus, even though the *Stewart* plaintiffs did not purchase certain products, they purchased similar products that were closely related, the defendant was the same and the basis for the claims were the same. *Id.* at *16. The court therefore found that "dismissal [was] inappropriate at [the motion to dismiss] stage of the litigation because whether they may represent a class of plaintiffs who do not have standing [was] not before the Court." *Id.* at *16; *see also In re Gerber Probiotic Sales Practices Litig.*, No. No. 12–835 (JLL), 2014 WL 5092920, at *5-6 (D.N.J. Oct. 10, 2014) (although plaintiffs did not purchase all products alleged in complaint, dismissal was inappropriate at motion to dismiss stage of litigation); *In re L'Oreal Wrinkle Cream Marketing and*

*Sales Practices Litig.*, No. 2:12-02571 (WJM), 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013) (many courts recognize circumstances in which putative class action plaintiffs can bring class claims based on products they did not purchase); *Luppino v. Mercedes-Benz USA, Inc.*, No. 09-cv-5583 (DMC), 2013 WL 6047556, at *5 (D.N.J. Nov. 12, 2013) ("The Court agrees with the Plaintiffs that it would be premature to determine the standing issue at this time as to product combinations Plaintiff did not purchase or lease themselves … The Court finds the analysis and conclusion reached in *Stewart* to be persuasive."); *Durso v. Samsung Electronics Amer., Inc.*, No. 2:13-cv-5352 (DMC), 2013 WL 5947005, at *6 (D.N.J. Nov. 6, 2013) (dismissal of plaintiff's claims related to products plaintiffs did not purchase or defects plaintiffs did not suffer is premature); *Burke v. Weight Watchers International, Inc.*, 983 F.Supp.2d 478, 482 (D.N.J. 2013) (declining to dismiss claims as to other products); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 243-44 (D.N.J. 2008) (holding that class representatives were typical and could assert claims on behalf of all class members even though they did not purchase all products subject to suit).

The cases on which Apple relies are factually distinguishable and do not compel a different result. For example, in *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J. 2011), the court made its decision in the context of 13 models of coffee makers and two defendants. Further, while Apple

relies on *Lieberson v. Johnson & Johnson Consumer Co.*, 865 F.Supp.2d 529, 537 (D.N.J. 2011), as demonstrated above, several courts have declined to follow the portion of the *Lieberson* holding involving standing, especially where, as here, the basis for the defect claim is the same for all three Watches, the representations of the quality and durability of the Watches are common, and the claims are for the same problem with the products of a single defendant.[12]  S*ee generally Neuss v. Rubi Rose, LLC,* 16-2339 (MAS)(LHG), 2017 WL 2367056, at \*5-\*6 (D.N.J. May 31, 2017) (declining to dismiss claims against one defendant from plaintiffs who had neither purchased nor used their product, because plaintiffs had the same basis for each defect among the different products, the products were closely related, and the claims were against only two defendants).  Accordingly, the Court should deny Apple's Motion on the basis of a purported lack of standing.

### D.    Plaintiff Has Standing to Seek Injunctive Relief

Finally, Defendant argues that Plaintiff lacks standing to seek injunctive relief because there are no allegations that Plaintiff intends to purchase another Watch in

---

[12] Although Apple relies on a footnote from this Court's decision in *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 n. 18 (D.N.J. 2014), that case involved what plaintiff can bring which state's claims.  In *Dzielak*, claims were brought by ten plaintiffs against manufacturers and retailers under the laws of eight states.  The Court held that a plaintiff can "bring state law claims only under the law of the state where he or she lived and the alleged injury occurred."  *Id.* at 332.  ("I deem the NJ Consumer Fraud Act claim to have been brought by Dzielak and Angelone individually and (putatively) on behalf of the New Jersey subclass; the California-law claims to have been brought by Baker and Maxwell individually and on behalf of the California subclass; and so on.")

the future or get her watch repaired.  Def. Br. at 25-26.  That argument ignores Plaintiff's allegation that she has not yet repaired her Watch because she would have to pay Apple for the repairs, which repairs cost almost as much as the Watch, yet continue to "run[] the risk . . . [that the] repaired Watch also would be prone to the same Defect."  ¶ 54.  So, until Apple is enjoined from denying the existence of the Defect and covering instances where the Defect manifests, Plaintiff cannot repair her Watch.

The cases relied on by Apple are inapposite, as they deal with situations where plaintiffs sought injunctions to prevent further misrepresentations.  For example, in *McNair v. Synapse Group Inc*., 672 F.3d 213, 223-225 (3d Cir. 2012), plaintiff made allegations of misrepresentations and deceptive techniques used to obtain magazine renewals, and the court found that plaintiffs could only be harmed again if they repurchased the same product or service, which they were unlikely to do now that they were aware of the misrepresentations.  Further, in *Dicuio v. Brother Intern. Corp.*, No. 11-1447 (FLW), 2012 WL 3278917 (D.N.J. Aug. 9, 2012), plaintiffs were current customers who still owned and tried to use the printers at issue, who sought to enjoin defendant from selling the printers at issue "without the requisite disclosures," but the court found that such relief would protect potential future printer purchasers, but would not have any effect on plaintiff and other current owners.  *Id.* at *14-*15.  Here, however, Plaintiff is seeking an injunction to have

Apple stop engaging in the unlawful practice (of failing to honor its warranties as to a defect it knew about before it sold the Watches), and Plaintiff's knowledge of Apple's improper conduct is not implicated by the nature of the injunction sought. Therefore, Defendant's Motion to Dismiss the claim for injunctive relief must fail.

### E.  Plaintiff Should Be Permitted to Amend if the Court Deems the CAC Deficient In Any Respect

Discovery has not begun in this case.  If the Court finds any deficiency in the CAC, Plaintiff respectfully requests that she be permitted leave to amend to cure it. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Paramount Ent., Inc. v. Laborers Eastern Region Organizing Fund,* No. 13-3295, 2014 WL 791825, at *4-*5 (D.N.J. Feb. 25, 2014) (Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be freely granted in the interests of justice).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated:   June 17, 2019                      SHEPHERD, FINKELMAN,
                                            MILLER &  SHAH, LLP

                                            */s/ James C. Shah*
                                            James C. Shah
                                            Natalie Finkelman Bennett
                                            475 White Horse Pike
                                            Collingswood, NJ  08107
                                            Tel: 856-858-1770
                                            Fax: 866-300-7367
                                            *jshah@sfmslaw.com*

_nfinkelman@sfmslaw.com_

John F. Edgar
Brendan M. McNeal
EDGAR LAW FIRM LLC
2600 Grand Blvd., Suite 440
Kansas City, MO  64108
Tel:  816-531-0033
jfe@edgarlawfirm.com
bmm@edgarlawfirm.com

_Attorneys for Plaintiffs_

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been electronically filed with the Court and is available for download and viewing using the Court's Electronic Case Filing System on this 17th day of June, 2019.

<u>/s/ James C. Shah</u>
James C. Shah