# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GINA PRIANO-KEYSER, on behalf of herself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**APPLE, INC.,**<br><br>Defendant. | Civ. No. 19-09162 (KM)(MAH)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Gina Priano-Keyser, on behalf of herself and a class of New Jersey purchasers, brings this putative class action against Apple, Inc. ("Apple") for damages, restitution, and injunctive relief relating to alleged defects in Second Generation and Third Generation models of the Apple Watch. The class action complaint ("CAC") asserts three causes of action, for violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* ("NJCFA"), breach of express warranty, and breach of the implied warranty of merchantability.

Now before the Court is Apple's motion to dismiss certain claims for lack of Article III standing, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 10). For the reasons set forth below, the motion is granted in part and denied in part.

1

## I. Facts[1]

This Court has subject matter jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a). For purposes of a motion to dismiss, all well-pleaded facts stated in the CAC are assumed to be true. *See* Section II.a, *infra*.

Since April 2015, Apple has manufactured and sold "smart watches," which allow a wearer to download apps, send and receive text messages, track the watch's location, and receive phone calls, among other features. (CAC ¶¶ 2, 31.) The first smart watches were known as "First Generation" watches. Since then, Apple has released additional generations, which include "Series 1" and "Series 2" watches, which were released in September 2016, and "Series 3" watches, which were released in September 2017. (*Id.* ¶¶ 2, 5 and 7.) The different Series have different capabilities; for example, the Series 2 and 3 watches were advertised as water resistant up to 50 meters, and Series 3 watches featured faster performance than Series 2 watches. (*Id.* ¶¶ 29, 32–33.) In general, the watches were advertised as "activity-oriented devices"; in promotional images, watch-wearers are shown participating in various physical activities, such as running, hiking, climbing, dancing, swimming, and surfing. (*Id.* ¶¶ 32–34.)

Apple provides a limited warranty for its watches, running for one year from the original purchase date (the "Limited Warranty"). (*Id.* ¶ 36.) The terms of Apple's Limited Warranty, generally the same for all models, state as follows:

---

[1] For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "CAC" | = | Plaintiff's Class Action Complaint [DE 1] |
| "Motion" | = | Defendant Apple's Motion to Dismiss [DE 10] |
| "Opposition" | = | Plaintiff's Opposition Brief to Apple's Motion to Dismiss [DE 13] |
| "Reply" | = | Apple's Reply Brief in response to Plaintiff's Opposition [DE 16] |

2

### WHAT IS COVERED BY THIS WARRANTY?
Apple Inc. of One Apple Park Way, Cupertino, California, U.S.A. 95014 ("Apple") warrants the Apple-branded hardware product and Apple-branded accessories contained in the original packaging ("Apple Product") against defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase by the end user purchaser ("Warranty Period"). Apple's published guidelines include but are not limited to information contained in technical specifications, user manuals and service communications.

### WHAT IS NOT COVERED BY THIS WARRANTY?
. . . . This Warranty does not apply: (a) to consumable parts, such as batteries or protective coatings that are designed to diminish over time, unless failure has occurred due to a defect in materials or workmanship; (b) to cosmetic damage, including but not limited to scratches, dents and broken plastic on ports unless failure has occurred due to a defect in materials or workmanship; . . . (d) to damage caused by accident, abuse, misuse, fire, earthquake or other external cause; . . . (h) to defects caused by normal wear and tear or otherwise due to the normal aging of the Apple Product . . .

(*Id.* ¶ 37.)[2]

Apple's website states that an Apple Watch is considered "out of warranty" when it is (1) past the eligible warranty term; (2) "has an issue that's not covered under warranty or consumer law, such as accidental damage"; and (3) if such service is not covered by an AppleCare plan. (*Id.* ¶ 38.)

On or about October 15, 2017, Plaintiff purchased a Series 3, 38 mm gold, aluminum case Apple Watch. (*Id.* ¶ 49.) On or around July 4, 2018, while the watch was in the charger, the watch screen unexpectedly detached from the watch body. (*Id.* ¶ 50.) At that time, Plaintiff saw that there was a long, deep, jagged crack spanning the length of the bottom section of the screen. (*Id.*) Plaintiff's daughter pushed the screen back into place but the watch was no

---

[2] The full Limited Warranty is found online at https://www.apple.com/legal/warranty/products/warranty-us.html, which Plaintiff cited at fn. 7 of the CAC.

longer functional. (*Id.*) Plaintiff brought the watch to a Genius Bar[3] appointment on August 10, 2018, where she was informed that the watch would need to be screened, diagnosed, and repaired at an Apple depot. (*Id.* ¶ 51.) On August 13, 2018, Plaintiff was told that Apple would not cover the cost of the repair of the watch under its Limited Warranty, and that fixing the watch would cost Plaintiff $229. (*Id.* ¶¶ 52–53.) Plaintiff declined to pay out-of-pocket to repair her watch and has been unable to use the watch since July 2018. (*Id.* ¶ 53.)

Plaintiff alleges that her experience is identical to those of thousands of Apple Watch owners. (*Id.* ¶ 56.) In the CAC, Plaintiff has reproduced quotes from other consumers who have complained of this issue on Apple's "Communities" forum. (*See id.* ¶ 56.) Those posts generally complain of the same issue: that the screen shatters or detaches from the body of the watch, and that Apple refuses to cover the cost of repair under its Limited Warranty. (*Id.*)

Plaintiff alleges that all Apple smart watches contain a common defect and flaw, consisting of swelling lithium-ion (or "li-on") batteries, which causes Apple Watch screens to "crack, shatter, or detach from the body of the Watch (the 'Defect')." (*Id.* ¶ 3, 45.) Specifically, the swollen battery puts upward pressure on the weakest point of the watch—the screen—which cracks along the perimeter, shatters, or fully detaches from the body of the watch. (*Id.* ¶ 46.) Plaintiff alleges that the Defect manifests itself suddenly, and is not the result of any damage or misuse on the part of the wearer. The CAC also alleges, however, that the Defect could be caused by aging or defective internal components of the watches. (*Id.* ¶ 3.) The Defect can pose a risk to consumers, and several putative class members have suffered scratches and burns due to the Defect. (*Id.* ¶ 47.)

Plaintiff alleges that Apple knew about the Defect based on consumer complaints published on the "Communities" forum on Apple's own website. (*Id.*

---

[3] "Genius Bar" is Apple's name for its in-store technical support stations.

¶ 5.) In April 2017, Apple acknowledged the swelling battery defect in First Generation Watches and, for those watches, extended its Limited Warranty from one year to three years. (*Id.* ¶ 6.) Apple also acknowledged the swelling battery defect in certain Series 2 watches, and, for qualifying watches, extended its Limited Warranty from one year to three years. (*Id.*)

The CAC is less specific about the Series 3 watches, however. Plaintiff alleges generally that purchasers of Series 3 watches encountered the same Defect as the purchasers of the Series 1 and 2 watches and have likewise complained on Apple's community forum. The CAC is silent, however, as to whether Apple has acknowledged the swollen battery issue or extended the warranty for Series 3 watches. (*Id.* ¶¶ 7, 45.) Furthermore, although Apple has acknowledged the "swollen battery" issue in certain First- and Second-Generation Watches, it has refused to acknowledge that the swollen batteries are the cause of the Defect. (*Id.* ¶ 59.)

The CAC alleges that Apple knew or should have known about the Defect, but actively concealed or failed to disclose it to Plaintiff (and putative class members). (*Id.* ¶ 8.) Plaintiff also alleges that Apple's internal policy is to deny the existence of the Defect or to claim that the Defect is the result of "accidental damages" caused by consumer. Apple has thus refused to have its Limited Warranty cover the cost of fixing the shattered or dislocated watch screens. (*Id.* ¶¶ 8, 10.) Plaintiff alleges that if she and other class members had known about the Defect at the time of purchase, they would not have bought the watches, or would have paid less for them. (*Id.* ¶ 12.)

## II. Legal Standard
### a. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

"The burden of establishing federal jurisdiction rests with the party asserting its existence." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (footnotes omitted) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n. 3, 126 S. Ct. 1854, 164 L.Ed.2d 589 (2006)). "Challenges to

5

subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Id.* (citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (alterations in original) (citing *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)) (quoting *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir.2007)).]

This is a facial jurisdictional attack. The applicable standard is similar to the one that applies to a Rule 12(b)(6) motion. *See* Section II.b, *infra*. The court considers only the allegations of the complaint and documents referred to therein in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### b. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

6

678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

### c. Motion to Dismiss under Federal Rule of Civil Procedure 9(b)

To the extent that a plaintiff's allegations sound in fraud, they are subject to heightened pleading requirements. A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Under Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223–24 (3d Cir. 2004); *see U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) ("A plaintiff

7

alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" (quoting *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002))). Where a plaintiff is unable to recite "every material detail of the fraud such as date, location and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Sys.*, 135 F. Supp. 2d 551, 557 (D.N.J. 2001)).

The heightened pleading requirements of Rule 9(b) apply to fraud-based New Jersey Consumer Fraud Act claims as well as common law fraud claims. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

### III. Discussion

#### a. Standing

Apple moves to dismiss claims based on the Apple Series 1 and Series 2 watches for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1). Apple asserts that Plaintiff, who purchased an Apple Series 3 watch, lacks standing to assert claims based on alleged defects in Series 1 and Series 2 Apple Watches. (*See* Motion ¶ 23–26.) Put that way, the point is obvious; a Ford owner cannot sue based on defects in a Chevy. Plaintiff replies, however, that, as class representative, she will have standing to assert claims arising out of defective Series 1 and 2 watches because all of the watches contain the same defect or flaw, and because the inner workings of the watch batteries "are only ascertainable through discovery." (*See* Opposition at 23–24.) Apple's motion to dismiss claims for lack of standing is denied, in that the relevant claims Plaintiff asserts on her own behalf involve the Series 3 watch only. Claims based on Series 1 or 2 can only be class-based claims, which Plaintiff would assert in a representative capacity, if and when the action is certified as a class action under Rule 23. I will not dismiss them from the Complaint at this preliminary stage.

8

In order to bring a suit in federal court, a plaintiff must have standing pursuant to Article III of the United States Constitution. Standing contains three elements: (1) a plaintiff must have suffered an "injury in fact" which is an invasion of a legally protected interest that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the conduct complained of; and (3) the injury must likely be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (internal citation and quotation marks omitted).

To satisfy Article III requirements, the injury complained of "must affect the plaintiff in a personal and individual way." *Id.* at 561. This requirement does not change in the context of a putative class action, and the named plaintiff who represents a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174 (1996).

What I am looking for here is an adequate allegation that this Plaintiff, personally, possesses a cause of action that she has standing to assert. Particularly at the pre-certification, motion-to-dismiss stage, the issue is whether the Plaintiff may assert an *individual* claim with respect to *her* Series 3 watch. The CAC does not allege that Plaintiff herself purchased or used the Series 1 or 2 Apple Watches; she cannot establish an injury-in-fact with regard to those watches, even if others could. But for now, the fact that other people purchased Series 1 or 2 watches is a bit of a distraction; the point here is that Plaintiff did not.

Plaintiff argues that all three series of watches contain the same defect or flaw, so that she might serve as a class representative for all three sets of purchasers. Plaintiff's allegations regarding Series 1 and Series 2 Apple

9

Watches will be chiefly relevant, if ever, to the issue of class certification.[4] Rule 23 issues such as the typicality of Plaintiff's claim, or whether she would be an adequate class representative, cannot be resolved now.

I return to the main point: If Plaintiff does not possess an individual claim that the Series 3 watch *she* purchased is defective, she is out of court, and her ability to represent others becomes a moot issue. For purposes of this motion to dismiss, I will focus on the allegations in connection with the Defect in the Series 3 Apple Watch which Plaintiff herself purchased and used.[5]

### b. Violations of the NJCFA

To state a prima facie case under the NJCFA, a plaintiff must allege three elements: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiffs ascertainable loss." *Dzielak v. Whirlpool Corp.*, 26 F.

---

[4] Class certification will pose its own set of issues. Plaintiff acknowledges throughout the CAC, for example, that the different watch series had distinct specifications and internal processors. (*See* CAC ¶¶ 25–30.)

[5] Plaintiff argues in her Reply brief that there is "considerable weight" of authority in this District which "recognizes that a plaintiff does have standing to assert claims on behalf of class members for similar products" which the Plaintiff did not purchase. (*See* Reply at 24–28.) She cites a number of opinions which rely on *Stewart v. Smart Balance, Inc.*, No. CIV.A. 11-6174 JLL, 2012 WL 4168584 (D.N.J. June 26, 2012). *Stewart*, however, drew a distinction between the analysis of the plaintiff's individual standing to assert her claim and the analysis of her ability to represent absent others under Rule 23. In *Stewart*, the court found that the named plaintiffs did possess claims as to certain products they purchased, but did not possess standing to assert claims as to products they had not purchased. *Id.* at *16. Still, the court did not dismiss the latter claims outright, finding that "dismissal is inappropriate at this stage of litigation because whether they may represent a class of plaintiffs who do have standing is not before the Court." *Id.* (citing *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083 (3d Cir. 1975) (holding that although Plaintiff, who had engaged in only a "consumer transaction," did not have standing to challenge a service charge rate imposed on "commercial transactions," she might have standing as a class representative under Rule 23 to represent those commercial transaction plaintiffs whose issues were "closely related" to her own). *Stewart* recognized the "inherent tension" between standing requirements under Article III of the Constitution versus Rule 23 for class certification. Still, no one doubts that the Plaintiff must possess an individual claim as a prerequisite to going forward to other issues in the case, including certification as a class representative.

Supp. 3d 304, 333 (D.N.J. 2014) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557, 964 A.2d 741 (2009)). Rule 9(b)'s heightened pleading standard applies to NJCFA claims that are based in fraud. *Dzielak*, 26 F. Supp. 3d at 333 (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

I focus here on the first, unlawful-conduct element. It is well established that unlawful conduct under the NJCFA falls into three general categories: affirmative acts, knowing omissions, and regulatory violations under N.J. Stat. Ann. §§ 56:8-2, 56:8-4. *See Dzielak*, 26 F. Supp. 3d at 334; *see also Harnish v. Widener Univ. Sch. of Law*, 931 F.Supp.2d 641, 648 (D.N.J. 2013); *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 419 (D.N.J. 2016), as amended (May 31, 2016). Here, Plaintiff asserts fraud-based NJCFA claims based on omissions of material facts.[6] Specifically, Plaintiff alleges that Apple failed to disclose

    a. . . . any and all known material facts or material defects associated with the Watches, including the associated repair costs, as well as the Defect in the Watches that exists during their normal and/or expected range of operation;

    b. . . . that the Watches were not in good working order, were defective, and were not fit for their intended purposes;

    c. . . . that the Watches were and are defective, despite the fact that Apple learned of such defects through testing, repair requests, and consumer complaints at or immediately after Apple began selling the Watches; and

    d. . . . that the Defect poses significant safety concerns.

(CAC ¶ 61.)

An unlawful omission "occurs where the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment." *Coba v. Ford Motor Co.*, 932 F.3d 114, 124 (3d Cir. 2019); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 441 (D.N.J.

---

[6] Apple argues in its Motion that Plaintiff failed to allege unlawful conduct in the form of an actionable affirmative misrepresentation. (*See* Motion at 11.) That theory does not seem to be in issue. I interpret the CAC as asserting an omission-based NJCFA claim. I am confirmed in that impression by Plaintiff's Reply brief, which argues only that the CAC sufficiently pleads an omission-based claim under the NJCFA. (*See* Reply at 6–19.)

11

2012) (internal citation and quotation marks omitted). "Implicit in the showing of an omission is the underlying duty on the part of the defendant to disclose what he concealed to induce the purchase." *Id.* There can be no unlawful conduct consisting of a nondisclosure "if the defendant was under no obligation to disclose the information in the first place." *Id.*

Apple argues that Plaintiff has failed to allege an omission-based NJCFA claim for three reasons: (1) the CAC does not sufficiently identify the Defect; (2) it does not allege facts sufficient to establish Apple's knowledge of the purported Defect; and (3) it does not allege that the alleged omissions were accompanied by the intent to deceive. (*See* Motion at 13–18.)

First, Apple contends that the CAC fails to sufficiently identify the Defect in the Series 3 watches. Specifically, Apple argues that the swelling of the li-on batteries is "just a consequence" and not a defect in itself, and that Plaintiff's alternative allegation that the swelling is caused by "aging . . . or by defective internal components" is far too broad to satisfy Rule 9(b)'s heightened pleading requirement. (*Id.* at 14.) As stated above, however, Plaintiff has alleged that the Defect consisted of swollen li-on batteries which exert an upward pressure, causing the screen to shatter, crack, or detach from the body. (CAC ¶¶ 3, 45.) The factual issue of whether the swelling battery is the root cause of the Defect, or just a symptom of something else, is more appropriately addressed after discovery has taken place. The CAC adequately identifies what Plaintiff says is the Defect in the Series 3 watches. Apple may deny it, but Plaintiff has sufficiently alleged it.

Apple's second and third arguments regarding the unlawful-conduct element are more persuasive. I agree that the CAC does not contain facts sufficient to demonstrate that Apple knew of the purported Defect when it sold Plaintiff her watch and that it concealed that knowledge with the intent to deceive the Plaintiff as purchaser.

As support for the contention that Apple knew or should have known about the Defect, the CAC generally points to two factors: (1) consumer

12

complaints posted on Apple's online discussion board and (2) customers' appointments with Apple Genius Bars to fix their damaged Series 3 watch screens. (*See* CAC ¶ 59.) Only three of the online customer complaints quoted in the CAC, however, apply to the Series 3 Apple watch. One customer, "Traceyhincks," wrote on January 3, 2018 that her Series 3 watch screen "cracked right around the edge and the face popped out," that her "husband contacted apple," and that Apple would not cover the cost of the repair under its warranty. (CAC ¶ 56.) Two other complaints, posted by "Njsurfmaster" and "THHV" on March 15, 2018 and March 28, 2018, allege similar damage to a Series 3 watch. (*See id.*)[7] I will assume *arguendo* that these facts might suggest Apple's knowledge (although it cannot be the case that any repair rate above zero constitutes notice of a "defect").[8] All of these customer complaints, however, were posted on Apple's community forum *after* Plaintiff had purchased her watch in October 2017. They cannot be used as evidence that Apple knew of the defect when Plaintiff bought her Series 3 Watch.

Plaintiff surely called Apple's attention to the problem with her watch when she brought it to an Apple Genius Bar on August 10, 2018. After her watch was screened and diagnosed at the "Apple depot," she was told that Apple would not cover the cost of fixing the watch under its Limited Warranty. (*See id.* ¶¶ 51–53.) Similarly, "Traceyhincks," "Njsurfmaster," and "THHV" seem to have brought their Series 3 watches to Apple, only be to be told that the Limited Warranty would not cover the repair. Such repair requests suggest—at most—that Apple was aware of a Defect as early as January 3, 2018; they do

---

[7] The CAC does not explicitly state that THHV's complaint is attributed to a Series 3 Apple Watch. Clicking on the complaint's URL for the post, however, shows that it is.

[8] *See, e.g., Coba*, 932 F.3d at 125–26 (evidence of warranty claims resulting in replacement of allegedly defective fuel tanks "at a rate of less than 1%" was not sufficient, on summary judgment, to demonstrate a "material risk" that the company failed to disclose to purchasers).

13

not tend to demonstrate that Apple was aware of the Defect when Plaintiff or those other customers purchased their watches.[9]

Manufacturers, like Apple, commonly warrant their products against failures for a period of time, a guarantee which becomes part of the bargained-for exchange; if a warranted defect occurs, it will be fixed at the manufacturers' expense. *See Coba v. Ford Motor Co.*, No. 12-CV-1622 KM MAH, 2017 WL 3332264, at *3 (D.N.J. Aug. 4, 2017), *aff'd*, 932 F.3d 114 (3d Cir. 2019). As stated above, Apple provided a Limited Warranty with every purchase of a Series 3 Apple Watch. It is sometimes argued that warranting against a defect suggests knowledge that such a defect exists, but that argument has been rejected as a matter of law. Where "the relevant defect [is] covered by a warranty . . . 'it is not sufficient to allege that the defendant manufacturer knew that a part *might* fail [due to the defect] before the warranty expired but concealed that knowledge.'" *Id.* (emphasis in original) (citing *Alban v. BMW of N. Am., LLC*, No. CIV 09-5398 DRD, 2010 WL 3636253, at *10 (D.N.J. Sept. 8, 2010)). "Instead, '[t]o support a [NJ]CFA cause of action for fraud in the context of a warranted defect, a plaintiff must show that the manufacturer was not in good faith insuring against a risk, but that it actually knew with certainty that the product at issue or one of its components was going to fail.'" *Id.* (citing *Mickens v. Ford Motor Co.*, No. 10-CV-5842 KM MAH, 2015 WL 5310755, at *8 (D.N.J. Sept. 10, 2015)). "Only then will a concealed but warranted-against, defect furnish the basis for a CFA claim." *Id.* Here, it is not adequately alleged

---

[9] The online complaints do not give the date when the customers brought their watches to Apple to be assessed and repaired. The CAC only mentions the dates on which they posted their complaints. Additionally, only Njsurfmaster's complaint mentions when he purchased his Series 3 watch, which was in September 2017. Without such information, Plaintiff has not sufficiently alleged what Apple potentially knew about the Defect and when Apple might have become aware of the purported Defect. This does not meet the heightened pleading requirements of Rule 9(b). Although the "heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009).

that Apple knew with certainty that the watches would fail, and neither the customer complaints posted on Apple's online discussion board nor the customers' appointments with Apple Genius Bars come close to suggesting such knowledge.[10]

Thus, I find that Plaintiff has not adequately pled the first NJCFA element of unlawful conduct (here, an unlawful omission), and I will grant Apple's motion to dismiss Count I of the CAC.

### c. Breach of Express Warranty

Plaintiff also asserts a claim of breach of express warranty. "Under New Jersey law, such a claim has three elements: '(1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.'" *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d at 420. The CAC states that Apple provided a one-year Limited Warranty to purchasers of the Series 3 Apple Watch. The Limited Warranty does not apply to consumable parts, such as batteries, or cosmetic damage, "unless failure has occurred due to a defect in materials or workmanship." (CAC ¶ 37.) According to the CAC, Apple violated the terms of the Limited Warranty because the Defect occurred in Plaintiff's watch within the one-year warranty period, the Defect was (or could have been) caused by faulty materials or workmanship, and Apple refused to cover the cost of repairing the watch under the terms of its Limited Warranty. At the pleading stage, that is sufficient to state a claim for breach of express warranty.

Apple argues that this claim should be dismissed because "Plaintiff at best alleges an . . . issue with design choices, and not a manufacturing defect";

---

[10] The CAC also states that Apple acknowledged the swollen battery issue as to the First Generation and Series 2 watches, and extended the Limited Warranty for certain qualified watches. As for the Series 3 watches, however, the CAC contains no such allegation.

15

the CAC, says Apple, "does not allege that Plaintiff's Watch is in any way distinguished from other watches in the same class or that [her watch] deviated from Apple's intended specifications." (Motion at 21.) "At the pleading stage, however, 'where the distinction between a defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.'" *Volin*, 189 F. Supp. 3d at 421 (citing *Alin*, 2010 WL 1372308, at *6). Thus, I find that Plaintiff has sufficiently alleged a claim for breach of express warranty.

Apple also argues that the express warranty claims on behalf of putative class members whose Limited Warranties have lapsed must be dismissed. To be sure, Apple is looking ahead somewhat to the class claims. I will nevertheless reach this argument, which is one of law, and which will likely bear on the certification issues.

The general rule is that "an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed" and thus any latent defects "discovered after the term of the warranty are not actionable." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (alteration in original) (internal citation and quotation marks omitted). That *Duquesne* rule is clear enough.

Plaintiff, however, cites an exception. In certain situations, a plaintiff *may* state a claim for an alleged breach of warranty outside of the applicable time period if the underlying conduct was unconscionable. *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014). Unconscionability may be "substantive" or "procedural." *Id.* at *13–*14. A contract term is substantively unconscionable if it is "excessively disproportionate" and involves an "exchange of obligations so one-sided as to shock the court's conscience." *Id.* Procedural unconscionability focuses on the circumstances of the negotiation and the personal qualities of the negotiators. *Id.* In *Skeen*, the plaintiffs alleged that the "[d]efendants knew the defects

16

would manifest and manipulated the warranty term to make sure it did not happen until after the warranty term expired." *Id.* at *1. Additionally, the court found that plaintiffs therein sufficiently pled substantive unconscionability because the defendants knew that the product at issue would fail and "manipulated the warranty terms to avoid paying for it." *Id.* at *14.

Here, the CAC does not allege such certain knowledge or unconscionability. Plaintiff does not allege, for example, that Apple manipulated the terms of the Limited Warranty agreement to ensure that the defect would manifest itself after the warranty term expired. Thus, I find no reason to depart from the general rule stated by the Third Circuit in *Duquesne*. I will dismiss any breach of express warranty claims for putative class members whose Limited Warranties have lapsed prior to discovering the Defect.

### d. Breach of Implied Warranty of Merchantability

Apple also argues that Plaintiff's claim for breach of the implied warranty of merchantability should be dismissed, because such a warranty is clearly disclaimed. Plaintiff's papers contain no argument in opposition to this point.

Under New Jersey law, a merchant or seller can exclude or modify the implied warranty of merchantability, if it is it is in writing and conspicuous. N.J. Stat. Ann. § 12A:2-316. "[W]hether a disclaimer is conspicuous is a question of law for the Court." *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *28 (D.N.J. July 29, 2015). Here, the Limited Warranty expressly states that it is

> EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES . . . WHETHER EXPRESS OR IMPLIED . . . . APPLE DISCLAIMS ALL STATUTORY AND *IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY* AND FITNESS FOR A PARTICULAR PURPOSE AND WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS, TO THE EXTENT PERMITTED BY LAW.

(CAC ¶ 37 n. 7 (*italic* emphasis added).)

Those disclaimers are conspicuously printed in capital letters near the beginning of the Limited Warranty. Because the disclaimers are "clear, conspicuous, and unambiguous," I hold that they are valid as a matter of law.

17

See *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 2015 WL 4591236, at *28. Therefore, I will dismiss Plaintiff's implied warranty claim.

### e. Injunctive Relief

Finally, Defendants argue that Plaintiff lacks Article III standing to seek injunctive relief. This portion of the motion is apparently not directed at any Count as such, but at a boilerplate paragraph (e) in the prayer for relief.

As stated above in Section III.a, *supra*, a plaintiff must demonstrate that she has suffered an injury-in-fact that is concrete and particularized, and actual or imminent, in order to have Article III standing. *Lujan*, 504 U.S. at 560. The Third Circuit has held that when prospective relief is sought within the class action context, at least one named plaintiff "must show that [s]he is likely to suffer future injury from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012). "As framed by *McNair*, the standing question is whether a putative class representative has alleged that he or she will be harmed, a second time, by the misrepresentation, not whether he or she will be harmed by the operation of the product itself." *Dicuio v. Brother Int'l Corp.*, No. CIV.A. 11-1447 FLW, 2012 WL 3278917, at *15 (D.N.J. Aug. 9, 2012) (Wolfson, J.).

Here, the CAC somewhat vaguely seeks injunctive relief to enjoin Apple "from engaging in the unlawful practices alleged" in the CAC. (CAC at 37.) Plaintiff clarifies in her Opposition that she seeks to enjoin Apple from "failing to honor its warranties as to a defect it knew about before it sold the Watches. . . ." (Opp. at 29–30.) As to Plaintiff herself, there is seemingly meaningful injunctive relief that the Court—if it found liability, of course—could give. Apple could be ordered, for example, to honor its Limited Warranty and repair Plaintiff's watch at no cost.

The scope and availability of injunctive relief poses issues that lie several contingent steps in the future. For now, I will not strike the prayer for injunctive relief at the motion-to-dismiss stage.

## IV. Conclusion

For the reasons set forth above, Apple's motion to dismiss claims for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), is denied, in that the relevant claims Plaintiff asserts on her own behalf involve only the Series 3 watch that she purchased. Claims based on Series 1 or 2 are class-based claims which Plaintiff could assert only in a representative capacity, if the action were certified as a class action under Rule 23 and Plaintiff were found to be an appropriate representative. It would be premature to dismiss them from the complaint, however.

Apple's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is granted in part and denied in part. It is granted as to Count I (NJCFA) and Count III (breach of implied warranty of merchantability), which are dismissed. It is granted as to Count II (breach of express warranty) to the extent that claims lie outside of the one-year warranty period. The motion to dismiss is denied as to the remainder of Count II (breach of express warranty) and the prayer for injunctive relief.

Because this is an initial motion to dismiss, all dismissals are without prejudice to a properly supported motion to amend filed within 30 days.

An appropriate order follows.

Dated: December 30, 2019

*Kevin McNulty*
**Kevin McNulty**
**United States District Judge**